CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Nehemiah Kong**, | Case No. |
| Plaintiff, | **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |
| v. | |
| **Mana Investment Company, LLC**, a California Limited Liability Company; **Starbucks Corporation**, a Washington Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Nehemiah Kong complains of Defendants Mana Investment Company, LLC, a California Limited Liability Company; Starbucks Corporation, a Washington Corporation; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who suffers from Polio. He uses a wheelchair for mobility. He has a

1

Complaint

specially equipped van with a ramp that deploys out of the passenger side of his van.

2.  Defendant Mana Investment Company, LLC owned the real property located at or about 11931 Beach Blvd., Stanton, California, in July 2018.

3.  Defendant Mana Investment Company, LLC owns the real property located at or about 11931 Beach Blvd., Stanton, California, currently.

4.  Defendant Starbucks Corporation owned Starbucks located at or about 11931 Beach Blvd., Stanton, California, in July 2018.

5.  Defendant Starbucks Corporation owns Starbucks located at or about 11931 Beach Blvd., Stanton, California, currently.

6.  Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8.  Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights

Complaint

Act, which act expressly incorporates the Americans with Disabilities Act.

9.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to Starbucks in July 2018 to get coffee.

11. Starbucks is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of Starbucks.

13. Unfortunately, even though there were two parking spaces marked and reserved for persons with disabilities directly in  front of Starbucks during Plaintiff's visit, the parking stalls and access aisle were not level with each other because there was a built up curb ramp running into the access aisle.

14. This curb ramp caused slopes greater than 2.1%.

15. Additionally, the parking stalls and access aisle had slopes greater than 2.1%.

16. Currently, this curb ramp causes slopes greater than 2.1%.

17. Currently, the parking stalls and access aisle are not level with each other and there are inaccessible slopes in both the access aisle and parking stalls.

18. Plaintiff personally encountered these barriers.

19. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

20. Meanwhile, and even though there were parking spaces ostensibly reserved for persons with disabilities in other parts of the shopping center that plaintiff did not confront, most of the parking spaces have cross slopes and

Complaint

running slopes that are not accessible to persons with disabilities. They exceeded 2.1%.

21. Paths of travel are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Starbucks.

22. The walkway/path of travel leading to the entrance of Starbucks has cross slopes of as much as 2.7%. This is inaccessible to wheelchair users.

23. The other two buildings on the property, meanwhile, have cross slopes on the walkways that are above 2.1%.

24. Transaction counters are also one of the facilities, privileges, and advantages offered by Defendants to patrons of Starbucks.

25. Unfortunately, the Defendants crowd the transaction counters with merchandise and displays, which narrows the clear width of the counters to less than 36 inches.

26. The Defendants have no policy in place to make sure that the transaction counters are kept clear for persons with disabilities.

27. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

28. Plaintiff plans to return and patronize Starbucks but is deterred from visiting until the defendants remove the barriers.

29. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

30. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of

4

Complaint

access if complete removal were not achievable.

31. For example, there are numerous paint/stripe companies that will come and stripe a level parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

32. Plaintiff is deterred from returning and patronizing Starbucks because of his knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize Starbucks as a customer once the barriers are removed.

33. Given obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all defendants (42 U.S.C. section 12101, et seq.)

34. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

35. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone

Complaint

who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a.  A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

36. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle is not level and has a ramp taking up part of the access aisle. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps

Complaint

are not permitted to project into access aisles and parking spaces. *Id.* No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

37. Here, the failure to provide level parking in front of Starbucks and other parts of the shopping center is a violation of the law.

38. Nowhere shall the cross slope of an accessible route exceed 2.1%. 1991 Standards §4.3.7. 2010 Standards § 403.3.

39. Here, the slopes along the walkways leading to the entrance of Starbucks and the other two buildings on the property exceeded the levels allowed by law.

40. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

41. Here, no such accessible, compliant transaction counters have been provided at Starbucks. This is a violation of the ADA.

42. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

43. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

44. Given its location and options, plaintiff will continue to desire to patronize Starbucks but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive

Complaint

relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiff and against all defendants) (Cal Civ § 51-53)

45. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code §51(b).

46. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f).

47. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

48. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the

Complaint

plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: September 7, 2018         CENTER FOR DISABILITY ACCESS

By: _____
          Chris Carson, Esq.
          Attorney for plaintiff

9

Complaint